OLIVER W. BARRETT *et al.*

*v.*

TALMADGE E. SPAIDS.

1. MALICIOUS PROSECUTION—*of the necessary elements.* The one most important element is, want of probable cause. Malice is unimportant, if there be probable cause. Malice and want of probable cause must both be present. The gist of the action is, that the prosecutor, or party suing out the writ, acted maliciously, and without probable cause. If there is no malice, or if there be, and there was probable cause, the action will not lie.

2. PROBABLE CAUSE—*what constitutes.* A reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense charged, constitutes probable cause.

3. Where the plaintiff had been, for several years prior to January, 1869, engaged in an extensive mercantile business, and had received large shipments of goods during the latter part of December, 1868, and up to January 2d, 1869, through the defendants, as common carriers, on which he failed to pay the freight, and had received, through the hands of the defendants, as common carriers, packages containing very considerable sums of money, being the returns from goods shipped by him to his customers, and had given checks to defendants for freight at several different times, all of which were dishonored at the bank on which they were drawn, for the reason that he had no funds there to pay them; and, on the second or third day of January, when the defendants demanded payment of their bills for freight, told them he had no money, and that since the first day of January he had been doing business as agent: *Held,* that these facts constitute probable cause for swearing that the plaintiff had, within two years, fraudulently conveyed or assigned his property and effects, so as to hinder and delay his creditors, and to cause an attachment on that ground to be issued against his property.

4. SAME—*acting upon advice of counsel.* In an action for malicious prosecution in respect to the suing out of an attachment against the plaintiff's property, it seems, if the defendant acted upon the advice of competent counsel, and in good faith, in suing out the writ, he will be relieved from liability to respond in damages, for want of probable cause, for his action in the premises, the same as in a case where the prosecution was on a criminal charge.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

Messrs. MONROE, BISBEE & GIBBS, for the appellants.

Messrs. SLEEPER & WHITON, for the appellee.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

This was an action on the case, in the Superior Court of Cook county, brought by Talmadge E. Spaids against Oliver W. Barrett, Charles Fargo and the American Merchants' Union Express Company, the first named being the general

agent, and the last named,. general superintendent, of that company, in the North-west, to recover damages for maliciously suing out a writ of attachment against the plaintiff.

The cause was tried on the general issue, and special pleas setting up a release, etc., and a verdict found for the plaintiff, assessing his damages at four thousand one hundred and six dollars and thirty-four cents, on which the court rendered judgment, having overruled a motion for a new trial.

To reverse this judgment, the defendants appeal, assigning,. among other errors, the refusal to grant a new trial.

This cause was before this court at the September term, 1870, *Spaids* v. *Barrett et al.* 57 Ill. 289, in which the pleadings, only, were settled.

In determining upon the propriety of refusing a new trial, we are compelled to examine the testimony, to ascertain if the elements requisite to maintain the action are there found. The one most important element is, want of probable cause for suing out the writ. Malice is unimportant, if there be probable cause. It is a rule of law, that malice and want of probable cause must both be present. The gist of the action is, that the prosecutor, or party suing out the writ, acted maliciously, and without probable cause. If there is no malice, or if there be, and there was probable cause, the action will not lie. *Leidig* v. *Rawson*, 1 Scam. 272; *Jacks* v. *Stimpson*, 13 Ill. 702; *McBean* v. *Ritchie*, 18 ib. 114. Later cases are to the same effect. *Hurd* v. *Shaw*, 20 ib. 354; *Wade* v. *Walden*, 23 ib. 425, where it was said, the existence of malice was not sufficient to raise a presumption of want of probable cause. And, in *Israel* v. *Brooks*, ib. 575, it was said, if there be probable cause, the malice of the prosecutor weighs nothing. *Ross* v. *Innis*, 35 ib. 487; *Mitchinson* v. *Cross*, 58 ib. 366.

What is probable cause, is defined in most of the above cases. In *Ross* v. *Innis*, *supra*, it was held to be, a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense charged.

What, then, is the evidence to establish probable cause? That shows that plaintiff was engaged, and had been for many years, in the wholesale oyster trade, in Chicago, receiving his supplies by express from the house of Faran & Co., Baltimore. According to plaintiff's testimony, it had proved a losing business. In the latter part of December, 1868, and up to the 2d day of January, 1869, plaintiff had received from Baltimore, through appellants' company, large quantities of oysters, for which he had failed to pay the express charges. On the last named day, appellant Barrett, the general agent of the company, was informed by one of the clerks that plaintiff's checks, to the amount of thirteen hundred and eighty-six dollars, had been thrown out by the bank on which they were drawn, plaintiff having no funds there to meet them, and had not had for some time previous. Barrett then directed the clerk to make out plaintiff's account, which was done by the bookkeeper. This account showed that plaintiff was indebted to the express company, for freight on oysters, in the sum of two thousand nine hundred and ninety-six dollars. Barrett proceeded to plaintiff's place of business, on La Salle street, with the account, and demanded payment, and plaintiff objected to paying, insisting the amount was too large, that there was a mistake in it; that all he owed, and so he testified on the trial, was one thousand or eleven hundred dollars. He also said he had no money to pay it with, and that, since the first day of January, he had been acting as agent. This was on the second or third day of January, 1869. Barrett immediately communicated this to his superior, Mr. Fargo, the general superintendent, who thereupon went, himself, to plaintiff, with the account, and with the same result. The pretense was set up by plaintiff that the company had promised him more favorable rates. The testimony of plaintiff, himself, shows that he did not know what the rates were to be.

We will now consider the plaintiff's position. Previous to December 24, the plaintiff had given to the express company

several checks for freight charges, amounting in the aggregate to six hundred and thirty dollars and seventy-five cents, all of which had been refused by the bank on which they were drawn, for want of funds to meet them. On that day, these several checks were consolidated into one check for the same amount, six hundred and thirty dollars and seventy-five cents, which was also thrown out by the bank for the same reason. There was, then, on that day, an indebtedness acknowledged by plaintiff of that amount, for freight, then due. The account presented to plaintiff, and not disputed by him, shows that, subsequently, from that day to the 2d of January, 1869, plaintiff received, through this express company, thirty-seven thousand three hundred and fifty pounds of oysters in cases, the freight on which, at established rates, amounted to thirteen hundred and seven dollars and twenty-five cents. It is not claimed by plaintiff that he had paid any of this freight. By his own admissions, there was due the express company near two thousand dollars, yet plaintiff swears he owed them not over eleven hundred dollars.

Taking, then, the testimony of Fargo, Barrett, and the clerk of the company, together with that of the plaintiff, that his checks, to the amount of thirteen hundred and sixty-eight dollars, had been dishonored by the bank, the reasonable conclusion must be, that the account of appellants, as shown on the trial, was correct. When plaintiff was requested, by Barrett and Fargo, to pay the amount, he objects, on the ground it is too large, and that there is a mistake in it; he is requested to go with them to their office and have the mistake corrected. He then says he has no money to pay it with, and that, since the first of January, he has been acting as agent.

The express company knew that packages of money had come to their office for the plaintiff, and which he had received, the amount being very considerable, being the returns for oysters he had distributed to his customers in the West, and, when asked what he had done with all this money, he is content to reply that he hadn't it.

It seems to us, any cautious, prudent man of business, under these circumstances, could not have failed to believe that this man had already conveyed away, or was preparing to convey his property, in fraud of his creditors. He, for ten years the principal in an establishment doing a large amount of business, and with a large stock on hand, suddenly, on the call of an important creditor, sinks his position as owner and principal, and turns up an agent. But few cautious or prudent creditors would, under such circumstances, hesitate *sua sponte* to sue out a writ of attachment at once. But appellants, more prudent and cautious than the generality of business men, did not act precipitately, but at once applied to a distinguished attorney of this court, and laid the case before him, putting him in full possession of all the facts as here briefly detailed. The attorney applied to, is known as able, honest and conscientious, and he not only advised them, but reminded them, as officers of the corporation, having an important trust committed to them, that it was their duty to sue out an attachment, and prepared the affidavit found in the record.

Plaintiff had from the 2d day of January to the 6th, to adjust this account, but refused to do it, under the shallow and unsubstantiated pretense, that his rates, as a special favor, were to be reduced, thereby lessening the demand very materially. The great preponderance of the evidence is against any such pretension. Even the plaintiff, in his testimony, can not swear what the rate was to be, whether two dollars the 100 lbs., or two dollars on each case. It seems quite difficult, if not impossible, to see, under these facts, there was not probable cause. We think probable cause is established, and further, that these proceedings were commenced on the advice of able counsel. This court has held, where the prosecution was on a criminal charge, and the prosecutor is sued in an action for damages, if he is able to show and does show that he took competent legal advice, in good faith, to ascertain what course to pursue, and such counsel, after proper deliberation and examination into the facts, advised an arrest for a crimi-

nal offense, that the party causing the arrest should not be required to respond in damages, for want of probable cause, for his action in the premises. *Ross* v. *Innis,* 26 Ill. 259.

In *Collins* v. *Hayte,* 50 ib. 353, it was said, good faith on the part of the prosecution is an important, if not a vital, element of inquiry, and is always a sufficient justification, except where an unreasonable credulity is manifested, inducing the prosecutor to draw conclusions of guilt, when it would have been wanting in the perception of a person of ordinary prudence and judgment, and the same rules apply to both civil and criminal prosecutions.

But a point is made on the fact that the affidavit on suing out the writ of attachment was for a sum too large. It is claimed there was a mistake, against the debtor party, of three hundred and twenty-one dollars, for which a check had been given.

But, if this be so, does it tend to show an absence of probable cause? The bookkeeper was directed, by Barrett, to make out the account from the books. Barrett did not act in that capacity. He did not keep the books, but stood in the same relation to the clerk, who did, as every other business man stands to his clerk or bookkeeper. It is presumed the bookkeeper keeps correct books, at least his employers must act on that presumption, and they do so act until something occurs to overthrow the presumption. Barrett had a right to believe the amount to be as stated by the bookkeeper, and by him itemized, and, everything seeming fair, that it was correct, and the sum total therein exhibited was the true amount of plaintiff's indebtedness. What business man, however prudent and cautious he may be, would hesitate to take an account, regularly made out by his bookkeeper, as the true account?

In a place like Chicago, or any other large city, some of whose business men may not have a permanent interest in the city, the utmost vigilance and energy is often necessary to be exercised, to prevent frauds upon confiding creditors. This

plaintiff was doing a large business in Chicago during the whole of 1868, and had, in the prosecution of his business, incurred large liabilities to this express company, and had trifled with them by giving his checks on a bank in which he had no deposits to meet them. When payment is demanded, in January following, he replies he can not pay; that, since the first day of January, he has been doing business as agent. What other conclusion could a creditor of his arrive at, than this, and is it not a reasonable one, that he had secretly transferred his stock? If he was doing business as agent, then the stock must have belonged to his principal, whoever he might be, and it must have been secretly transferred. This was enough to justify the proceeding by attachment, and so eminent counsel advised. Would not, under the circumstances developed in this record, any reasonable man, without professional advice, have resorted to this process, and been justified in so doing? We think so. That everything which was done, was done in the utmost good faith, there can not be a well-founded doubt. We have looked carefully through the testimony, and are compelled to the conclusion, that the jury did not comprehend the law governing the case, else they could not have found this verdict.

Some attempt was made to show that a larger amount of property was levied on, under the writ, than there was any need for, and that proper care was not extended to it, it being of a perishable nature. The preponderance of the testimony is all the other way. Only one hundred and thirty cases were levied on, and the only restriction imposed by the officer on the appellee, was, that the property should not be removed. The plaintiff could have iced them to his heart's content, had he been so disposed. Neither in suing out the writ nor in the proceedings under it, can we perceive the least indication of a design or wish to harrass or oppress the plaintiff, and, in the existence of probable cause, they were justified in all their acts.

But the plaintiff, himself, after the attachment proceedings were stopped, acknowledged an indebtedness of more than twenty-two hundred dollars, after a full and fair settlement, in which appellants allowed the plaintiff all the credits he claimed, and actually paid that amount in discharge of his indebtedness, and executed a release and receipt in full.

It is now claimed this release or receipt was obtained by duress of goods, and is therefore inoperative. A jury may so believe, but, in doing so, they seem to sin against light and knowledge. There was no duress, and plaintiff, under that ridiculous pretext, should not be permitted to make a speculation so large and so fruitful, as he seems disposed to do, by taking advantage of the popular prejudice against corporations, and, through that, recover a verdict large enough to pay them an honest debt, long due, and near one hundred per cent more.

We see no merit in this claim of the plaintiff, and can not but express our surprise the court before which the cause was tried suffered such a verdict to stand.

On a careful and thorough examination of the whole record, we are satisfied the plaintiff ought not to recover, and that appellants had good cause for proceeding by attachment against his goods and chattels in the manner they did.

The judgment is reversed.

*Judgment reversed.*