## M. H. Fitzsimmons et al. v. Edna M. Mason.

### Gen. No. 4,823.

1.  PROBABLE CAUSE—*defined.*  Probable cause is a reasonable ground for belief in the existence of such a state of facts as would warrant a suit or proceeding complained of.  A reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense, constitutes probable cause.

2.  MALICIOUS PROSECUTION—*what defense to action of.*  Where
a party consults with competent legal counsel, in good faith,
·to ascertain what course to pursue in reference to acts done by
another, and such counsel after proper deliberation and examina-
tion of the facts advises an arrest for a criminal offense, the party
causing the arrest should not be held to respond in damages for
want of probable cause for his action in the premises.

Action on the case.  Appeal from the Circuit Court of McHenry
county;  the Hon. R. W. WRIGHT, Judge, presiding.  Heard in
this court at the April term, 1907.  Reversed, with finding of facts.
Opinion filed August 6, 1907.

C. H. WAYNE and F. B. BENNETT, for appellants.

J. F. CASEY and D. T. SMILEY, for appellee.

MR. JUSTICE THOMPSON delivered the opinion of the
court.

This is an action on the case begun by Edna M.
Lester, now Edna M. Mason, appellee, on the first
day of January, 1902, in the Circuit Court of McHenry
county.  A declaration consisting of two counts for
malicious prosecution was filed on the fifteenth day of
May.  Two additional counts for false imprisonment
were filed January 23, 1903.  Pleas of not guilty were
filed to all the counts, and a plea of the Statute of
Limitations and one of justification were filed to the
counts for false imprisonment.  There have been two
trials before a jury.  On the first trial the jury dis-
agreed.  On the second the jury returned a verdict
for the plaintiff for $650, upon which the court, after
overruling a motion for a new trial, rendered judg-
ment, and the defendants appeal.

The trial court instructed the jury that there could
be no recovery upon either the third or fourth counts,
being the false imprisonment counts, hence it is un-
necessary to state the issues joined at the conclusion
of the pleading upon those counts.

The first and second counts allege in substance that
the defendants, falsely and maliciously, and without
any reasonable or probable cause, caused an affidavit

to be filed in the Circuit Court of McHenry county on the seventh day of October, 1898, charging the plaintiff with having fraudulently sold, concealed, assigned and removed certain personal property, consisting of thirty-two head of two-year-old heifers, eighteen spring calves, nine pigs, six horses and certain other property, with the intent to defraud James Fitzsimmons and Joseph Fitzsimmons out of a certain debt owing to them by the plaintiff, and with procuring thereon from the master in chancery of said court a writ of *capias ad respondendum* for the apprehension of the plaintiff without any probable cause, and procuring her arrest and detention for one week and depriving her of her liberty until she gave bail. It is alleged that on the eighteenth day of October, 1898, said writ was quashed and the defendant discharged, and that the defendants have not further prosecuted said charges, but have abandoned the same, and said proceeding is ended and terminated.

The record shows that James and Joseph Fitzsimmons, on the eighth of September, 1897, agreed to sell to Edna M. Giddings, later Mrs. Lester, but now Mrs. Mason, a farm of 277 acres for $16,650, payable $100 cash, the balance to be paid $100 September 15, 1897, and $200 on the fifteenth day of each succeeding month, with interest at six per cent. per annum from March 1, 1898; that plaintiff took possession of the land March 1, 1898, and has paid either $1,000 or $1,200 on the contract. Plaintiff, after buying the land, bought of James and Matthew Fitzsimmons personal property, consisting of cattle, horses, hogs, farming implements and furniture, for which she gave her note for $1,200, on which plaintiff thinks she paid $175. In the late summer of 1898 plaintiff claims she, not having been able to keep up the payments, asked the defendants to buy the personal property back, but that they would not, and that they advised her to ship the cattle and horses to Chicago. The cattle and horses were shipped to Chicago and sold three weeks

before the beginning of the prosecution complained of. Plaintiff claims this was done by her husband and not by her. The defendants deny that plaintiff ever advised or talked with them about disposing of the property. On October 1st plaintiff made a bill of sale of the personal property remaining, to her daughter, Mrs. Lillian M. Gardner, who lived with her on the farm, for the express consideration of $900. On October 3, 1898, an attachment was sworn out by F. L. Colby for $28.60, in which it was alleged that Mrs. Giddings was "about fraudulently to conceal, assign or otherwise dispose of her property so as to hinder or delay her creditors; and that within two years preceding the filing of the affidavit she had fraudulently concealed or assigned her property so as to hinder and delay her creditors." The same day six other attachment writs for small amounts were sued out against Mrs. Giddings, in favor of Herman Blank, Fred Schmidt, H. H. Freye, E. C. Turnet, G. L. Beckley, and H. H. Wilbur and Son, respectively. On October 6th L. A. Lewisohn swore out an attachment writ for the sum of $180 against Mrs. Giddings. On October 7th Leo W. Wheeler had an attachment writ issued for $200 and Charles Gardner had a similar writ issued for $175 against her. All these attachment writs were issued on affidavits stating the same reasons for their issuance as the Colby affidavit. Plaintiff testified in this case that her husband left her before the attachments were tried, and that she does not know where he is, and that he sent a man from Chicago to ship the cattle. She also testified that she was preparing to go to Chicago to live when the property was shipped to Chicago, and that no money was paid for the bill of sale by her daughter, but the property belonged to her and "she owed them money." The bill of sale conveyed all the property she had except some household goods. She also testified that Lewisohn was her lawyer, and she did not owe him anything, but gave him a note for $200, she did not know what for, except that

he came from Chicago to Nunda for her one day. "He told me he would try and save what he could on the attachments. He said 'sign this and we will try and save what we can for you.' I didn't owe Wheeler anything, he was an associate of Lewisohn." The bill of sale to Lillian M. Gardner and the records in the Lewisohn, Wheeler and Gardner attachment suits were admitted in evidence without objection. The records in these cases show that the Lewisohn writ was returnable October 11th and the other two on the thirteenth, and that on October 8th Mrs. Giddings voluntarily entered her appearance in each case and without denying the fraud charged confessed judgment and judgments were rendered for the full amounts claimed and an order made that the property attached be sold to satisfy the judgments and costs.

The Lewisohn attachment was begun the day before the affidavit was made for the *capias* issued at the instance of the appellants. The Wheeler and Gardner attachments were issued the same day proceedings for the *capias* were begun and the day before the *capias* was served. When her own attorneys, who were acting for her, could make an affidavit that they believed she "will fraudulently conceal," etc., and that she "has within the two years preceding the filing of this affidavit fraudulently conveyed," etc., before the appellants had taken any steps toward a writ, it would seem there was probable cause for such act on the part of appellants, as her attorneys must have been advised of the facts by her. When this is followed by appellee confessing the truth of the allegations of fraudulent acts and intentions made by her attorneys and by her son-in-law, who was a member of her family, probable cause for the writ issued by the appellants would seem to have been proven by the evidence. Probable cause is a reasonable ground for belief in the existence of such a state of facts as would warrant the suit or proceeding complained of. A reasonable ground of suspicion, supported by circumstances suffi-

ciently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense, constitutes probable cause. Barrett v. Spaids, 70 Ill. 408. The burden was on appellee to prove want of probable cause (Davie v. Wisher, 72 Ill. 262; Young v. Lindstrom, 115 Ill. App. 239), and the appellants have clearly proved probable cause for their action.

Proof was made that the appellants fairly stated the facts to a reputable attorney, and on his advice the action which resulted in the alleged malicious prosecution was taken. "Where a party consults with competent legal counsel in good faith, to ascertain what course to pursue in reference to acts done by another, and such counsel after proper deliberation and examination of the facts advises an arrest for a criminal offense, the party causing the arrest should not be held to respond in damages for want of probable cause for his action in the premises." Ross v. Innis, 26 Ill. 260; Abel v. Downey, 110 Ill. App. 343.

It is unnecessary, in the view we have taken of this case, to discuss the other errors that have been argued by counsel.

Upon the undisputed facts admitted by appellee to be true, there was probable cause for the proceedings begun by appellants, and a judgment for the appellee cannot be sustained. The judgment is reversed with a finding of fact.

*Reversed, with finding of fact.*

Finding of fact, to be incorporated in the judgment of the court:

The appellee failed to show a want of probable cause for the prosecution of the suit complained of by appellee.