30    343
115    ³248

# WILLIAM N. WHARTON

### v.

# GABRIEL K. WRIGHT AND MAGDALENE WRIGHT.

*Libel—Privileged Communications, Absolute and Qualified—Proof of Malice—Evidence—Damages.*

1. An absolute privileged communication is one in regard to which the public interest requires that one shall be allowed to speak or write fully and freely, even though the speaking or writing is knowingly false and malicious.
2. A qualified privileged communication is such a one as is required to be made honestly and for the common good.
3. In case of a qualified communication the person defamed is entitled to damages, if he can show that the same was made in bad faith and for the purpose of traducing him.
4. The burden of proving malice in such cases is upon the plaintiff.
5. In an action of libel based upon a written communication, this court holds that the evidence tends to show that the publication was attended with malice, and that the case should have been submitted to the jury with proper instructions.

[Opinion filed March 13, 1889.]

APPEAL from the Circuit Court of Cook County; the Hon. RICHARD S. TUTHILL, Judge, presiding.

This is an action on the case for libel. The declaration charges, in proper form, that appellees, on December 11, 1885, maliciously wrote, directed and sent to the firm of Crawford, Mumford & Wroten a letter concerning the plaintiff, as follows:

"We have this day handed H. B. Black, Esq., our affidavit, together with a sample marked 'Exhibit 3.' We desire to call your attention to the affidavit. You perhaps will be surprised when you learn the fact we kept from you from the beginning—that Alfred A. Wright and John W. Wright are brothers of the writer; that W. N. Wharton was also in the employ of the writer. This man Wharton is and has been their tool, unknown to the writer, until after the first of August, when he left my employ suddenly and without any provocation, and became their servant, and willfully swore falsely to the affidavit sent you. As to the invoice, and the difference in printing on the invoice, when you compare 'Exhibit 2' and 'Exhibit 3' you will see at once why we changed the printing on the invoice. It was no accident—no mistake. It was made expressly for our patent Helix needle, which is superior in quality to our Helix needle; and this man Wharton knew this to be the fact, and he was here when the change was made. But, to convince yourselves, kindly compare the labels of Exhibits 2 and 3, also the needles, and you will at once see that he perjured himself."

The general issue was interposed by defendants. At the trial it appeared that in the year 1885 appellees were in business in Chicago under the firm name of William Clark & Sons; Crawford, Mumford & Wroten, in Hannibal, Mo., and the firm of Alfred Shrimpton & Sons, in St. Louis. All three firms were engaged in selling needles. In the summer or fall of 1885 appellees, without any order from the Hannibal firm, and without any previous business relations with them, shipped them some needles, accompanied by an invoice. Shortly afterward A. A. Wright, a member of the St. Louis

firm, called on the Hannibal firm and stated to them that appellees had sold their patent Helix needle at a less price than that named in said invoice. Thereupon the Hannibal firm informed appellees of the fact stated by Wright, and appellees then wrote a letter to the Hannibal firm offering $100 for the production of a *bona fide* invoice of their patent Helix needle, made out in their office at the lower price named by Wright. The plaintiff, being informed of the offer, made his affidavit on November 21, 1885 (attaching thereto an invoice), stating that the invoice so attached, showing a purchase of 10,000 needles at seventy-five cents per thousand (that being the lower price named) by W. N. Wharton from William Clark & Sons, was true and correct in every respect, and was delivered to said Wharton by said Clark & Sons, together with said 10,000 needles at their place of business in Chicago, and that said needles were the patent Helix needle. The affidavit and the invoice were sent to the Hannibal firm, and by them transmitted to Chicago. Appellees being informed thereof, claimed, upon inspection of the paper, that it was a forgery, and wrote to the Hannibal firm the letter declared upon in this action. At the trial evidence was also given tending to prove that Gabriel K. Wright knew that the invoice was made out in appellees' office in the usual course of business; that the needles were actually sold at the price stated therein, and that Gabriel K. Wright knew that the charge of false swearing against plaintiff was not true.

When the plaintiff rested his case the court directed the jury to find the defendants not guilty, to which the plaintiff excepted. Motion by plaintiff for new trial overruled and exception.

Judgment on verdict and plaintiff appeals.

Messrs. Rich & Stone, for appellant.

Any false and malicious writing published of another, is libelous *per se* when its tendency is to render him contemptible or ridiculous in public estimation, or expose him to public hatred or contempt, or hinder virtuous men from associating with him, or which reflects upon his character, or

imputes something disgraceful to him.    Cooley on Torts, 206;
Townsend on Slander, 262, 264.

As a fitting climax to all the venom and ill-will and malice
displayed in the publication in question is the following:
" And you will at once see that he perjured himself." This
is libelous beyond question. A charge of perjury is action-
able *per se*. Sanford v. Geddes, 13 Ill. 329; Mitchell v. Mil-
holland, 106 Ill. 175; Townsend on Slander, 243, 244, 245.

The law is well settled that when the words are libelous
*per se*, malice is implied. Miller v. Johnson, 79 Ill. 61;
Rearick v. Wilcox, 81 Ill. 77.

When the language is false and malicious, *i. e.*, published
without lawful excuse, no other evidence of malice is neces-
sary. Townsend on Slander, 657.

A qualified privilege extends only to communications made
*bona fide* upon any subject-matter in which the party com-
municating has an interest, or in reference to which he has
a duty to a person having a corresponding interest or duty.
Edwards v. Chandler, 14 Mich. 471; Knowls v. Peck, 42
Conn. 386; Early v. Moss, 9 Ala. 266; Van Wyck v. Aspin-
well, 17 N. Y. 190; Lynch v. Febegir (La.), 1 Southern Rep.
690; Rainbow v. Benson, 32 N. W. Rep. 352; Chaffin v. Lynch
(Va.), 1 So. E. Rep. 803.

The meaning, in law, of a privileged communication, is that
it is made on such an occasion as rebuts the *prima facie*
inference of malice arising from the publication of matter
prejudicial to the character of the plaintiff, and throws upon
him the *onus* of proving malice in fact, but not of proving
it by extrinsic evidence only. He has still the right to re-
quire that the alleged libel itself shall be submitted to the
jury, that they may judge whether there is any evidence of
malice on the face of it. Wight v. Woodgate, 2 Comp. M.
& R. 573; 1 Gale, 329.

Having established the publication to be libelous and mali-
cious, we contend that the question whether the publication
was privileged or not was a proper one for the jury, and that
the court wrongfully withdrew the case from them. Zuck-
erman v. Sonnenschein, 62 Ill. 117.

The question whether malice existed should have been left with the jury. If malice existed an action would lie. Statements prejudicial to a person's reputation are privileged only where there is a want of malice, and the plaintiff may show by extrinsic evidence that there was malice. Elam v. Badger, 23 Ill. 498; Gazette v. Gilbert, 6 Gray, 94; Warnes v. Paine, 2 Sandf. 195.

No evidence was offered by the appellees to show whether the communication was privileged or not. They relied simply upon the article itself and the evidence produced by appellant. By withdrawing the case from the jury the court cut off appellant's right on rebuttal to introduce further proof of malice and ill-will. It was not incumbent upon appellant to show express malice upon the direct part of his case; the proper place for introducing proof of that character was upon the rebuttal—rebutting the question as to whether the communication was privileged or not. It was proper for the jury to say whether, considering all the circumstances of the case, the conduct of the defendant was not malicious. Boswell v. Ossgood, 3 Pick. 379; Remington v. Congdon, 11 Pick. 315.

The communication itself charges a crime. It was made wantonly, and without any reasonable evidence of its truth, or evidence or circumstance that would lead an ordinarily prudent person to believe that it was true. All the facts and circumstances are admissible, and should be taken into consideration in determining whether the charge was made through ill-will, or a wanton disregard of the character and right of appellant. The evidence should have been submitted to the jury to determine whether the appellees acted in good faith. Clinck v. Colby, 46 N. Y. 427; Brown v. Hathaway, 13 Allen, 239; Gazette v. Gilbert, 6 Gray, 694; Fowler v. Bowen, 30 N. Y. 25; Kelly v. Partington, 4 Barn. & A. 700; Bacon v. Mich. Cen. R. R., 33 N. W. 181; Wheaton v. Beecher, 33 N. W. 503.

Mr. M. L. Raftree, for appellee.

Garnett, P. J. The Circuit Court was of opinion that the letter which is made the foundation of this suit was a privi-

leged communication, and for that reason directed a verdict
for defendants.    Privileged communications are of two kinds:
absolute and qualified.    The absolute are those where the
public interest requires the defendant should be allowed to
speak or write fully and freely, even though the speaking or
writing is knowingly false and malicious.    The qualified priv-
ilege only protects the speaker or writer so far as it is done
honestly for the common good; and though the occasion be
one of qualified privilege, the person defamed may recover
damages, if he can prove that the occasion was used by the
defendant in bad faith to wilfully and knowingly traduce the
plaintiff.    When there is no dispute about the circumstances
under which the communication was made, it is a question for
the court whether the occasion was privileged.    He having
decided that the occasion was privileged, the question of mal-
ice then became important.    Odger on Slander and Libel, 183,
184, 266.

If malice be proved, the qualified privilege attaching to the
occasion is lost at once.    Ib. 267.    There can be no better
evidence of malice than the writing of that which the writer
knew to be untrue.    Elam v. Badger, 23 Ill. 501; Clark v.
Molyneux, L. R., 3 Q. B. D. 247.

The burden of proving malice in such cases is on the plaint-
iff.    He may prove the fact by extrinsic evidence, for example,
by showing there were former disputes between defendant
and himself, or that the defendant entertained any ill feel-
ing against him at any time, either before or after the date of
the publication.    The rule as to the admission of evidence to
show malice is very broad and liberal.

In fact, the plaintiff is not confined to extrinsic evi-
dence, but may rely on the words of the libel itself, and
the circumstances attending its publication.    If the expres-
sions employed appear uncalled for and in excess of the occa-
sion, there is enough evidence to go to the jury.    Odger on
Slander and Libel, 270, 271, 276, 280.

Here the appellees seek protection under the qualified priv-
ilege, and we are clearly of opinion that there was evidence

Wright v. Wright.

tending to prove that the publication of the letter complained of was attended by malice and the court should have submitted the case to the jury with proper instructions.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*