## PHILANY CRISTMAN
### v.
## JOHN CRISTMAN.

*Slander—Privileged Communications—Probable Cause—Malice—Evidence.*

1.   In an action for slander in charging plaintiff with commission of a crime, it is for the court to say whether the communication is privileged.

2.   To entitle plaintiff to recover in such action, there must have been both malice and want of probable cause.

3.   Malice is not necessarily inferable from want of probable cause.

4.   Whether there was malice and want of probable cause are questions for the jury.

5.   In this case it is held, that the communications were conditionally privileged, that there was probable cause, and that the words were spoken without malice.

## [Opinion filed June 21, 1890.]

APPEAL from the Circuit Court of DeKalb County; the Hon. CHARLES KELLUM, Judge, presiding.

Messrs. HARVEY A. JONES and COOK & UPTON, for appellant.

Messrs. DUANE J. CARNES and GILBERT H. DENTON, for appellee.

LACEY, J.   This was an action on the case for defamation of character, by appellee against appellant, in which there was a verdict and judgment in favor of appellee, in the court below, of $1,600.

The appellant is the mother of appellee, and resided on her farm.   There was living with her a daughter, Irene Cristman, then a woman grown, and a man servant, John Streuchen.

In January, 1888, a short time before the alleged slanderous

words were uttered, some person or persons came to her dwelling house, in the night time, and knocked at the door, and upon Streuchen going to the door and opening it he was fired upon by the assassin, and badly wounded in the stomach, and the assassin shortly afterward fired another shot with a pistol or gun through the window, and wounded Irene in the arm. These shots were unquestionably fired with the intention of murder, and the slanderous words charged in the declaration were that appellant grossly and maliciously charged the appellee with having been the person who fired the shots. To this declaration the appellant pleaded the general issue, and filed a notice that on the trial of the case she would give in evidence and insist that after the shooting occurred, and before the speaking of the words charged, the appellee was suspected by divers persons in the county of having done the shooting, and that she had been informed by persons of facts that led her to believe, and that she did believe at the time the words were uttered, that appellee did the shooting; and that she was also led to such belief by appellee's own conduct; but appellant disclaimed any intention of showing by the evidence that appellee was guilty of the crime charged. She also intended to show that the words were spoken under justifiable circumstances, and that the uttering of the words was privileged, and free from any imputation of actual malice. It does not appear from the evidence that the person who did the shooting had any intention of robbery; but that the aim was revenge, or some other personal motive not disclosed. The appellee was a young man, some twenty-five years of age, and had lived with his mother until he became of age, and was one of the two heirs, he and his sister, to his father's estate, consisting of a large farm on which his mother resided, and that after he had become of age he had married, and refused any longer to reside with his mother on her farm, but compelled her to buy out his interest, and that she had to borrow $3,000, and mortgage the farm to do so; that appellant was not on good terms with appellee's wife or himself, and not on visiting terms with him or his family; that some trouble had been had over appellee's grandfather's will,

by reason of which and the action of appellant, appellee had been cut off from a legacy of $500; that appellee had spent all his $3,000 received from his interest in the farm; that at the time of the shooting Streuchen claimed to recognize appellee as the person who shot him, and also persons who compared the tracks of the assassin, made when fleeing from the house on the night of the shooting, stated that they resembled appellee's; that just after the shooting, the whole neighborhood was of the opinion that appellee did it, and those rumors did not entirely emanate from appellant; and besides, appellant had no known enemies.    There are a number of other circumstances tending to cast a strong suspicion upon appellee and induce belief of his guilt, not necessary to mention.

It was a very strange occurrence, and certainly the evidence and circumstances reasonably tended to induce appellant to believe that her son was the guilty party, though we must presume that he was entirely innocent, as no attempt has been made to show his guilt or the truth of the charge. Had the appellant immediately sworn out a warrant against her son charging him with the crime, and he had been tried and acquitted of the offense, and this suit had been for malicious prosecution, the evidence would have been strong tending to show that appellant had reasonable cause to institute the criminal action.

The position of the appellant in this action is very much the same as though this were an action for malicious prosecution under the supposed circumstances above named, provided appellant, in saying what she did, was in pursuit of light to enable the case to be successfully prosecuted against appellee, and made to persons that in some way might aid her, or made to appellee himself.    It is all governed by the same rule of law that denominates such acts of parties, privileged, and the supposed offender not liable in an action for slander or malicious prosecution, unless actual malice, distinguished from malice at law, is proven, and this is a question for the jury.

In Briggs v. Garrett, 111 Pa. 404, 2 At. Rep. 521, the court say: " An action for libel is upon all fours with an action

for a malicious prosecution. The latter is but an aggravated form of an action for libel, as in it a libel is sworn to before a magistrate. The cases make no distinction between them." We may add here, an action for verbal slander also rests on the same principle of law, the one being written and the other verbal. As there is a contention between counsel for the respective parties, whether the court or jury is to determine when the occasion is privileged, when there is probable cause and where there is malice, active or constructive, we will refer to the principles established by our Supreme Court in cases for malicious prosecution, as being analogous and much more satisfactory than any decisions of any court of any other State or country.

We deduce from the cases decided in this State that, first, the court is the judge of the occasion when and where the communication is privileged; second, that it is a question for the jury to determine, after the court instructs what circumstances will constitute probable cause, the question as to the sufficiency of the proof of the facts; third, when there is not probable cause, it is for the jury to determine whether there was malice in fact, if indeed the jury should not always find there was malice in fact where there is want of probable cause, a question which, from the adjudged Illinois cases, we are not quite able satisfactorily to determine. However, it is said in Jacks v. Stimpson, 13 Ill. 701, "That inference of malice arising from want of probable cause may be rebutted, is not denied; but it is not necessarily overcome, as the instruction would imply, by simply showing, if such a thing be possible, that the defendant believed there was probable cause, when all the facts and circumstances under which he acted clearly show there was none; that his belief was utterly groundless, and could never have been formed without the grossest ignorance or negligence." As was said by Lord Ellenborough in Brooks v. Warwick, (2 Starkie, 390), "a commitment may be pressed under circumstances showing such a *crassa ignorantia* as amount to malice."

Then it is stated in the same opinion and authorities cited, that "the mere belief of the prosecutor is no defense."

Cristman v. Cristman.

In Harpham et al. v. Whitney, 77 Ill. 32, it is said : " There must be both want of probable cause and malice; if the law imputed malice from want of probable cause, then there would be no distinct requirement of malice; but want of probable cause would be the sole element necessary. It is often said that the jury may infer malice from the want of probable cause. They may do so under certain circumstances, but not in all cases. Malice is in no case a legal presumption from want of probable cause, it being for the jury to find from the facts proved that there was no probable cause. 1 Hilliard on Torts, 486. And if the defendant can not justify by proof of probable cause, he may still rebut the presumption of malice by showing facts and circumstances calculated to produce at the time on the mind of a prudent man a well grounded belief or suspicion of the party's guilt." Ibid. 515.

But would not the proof last suggested make out a case of probable cause, and if not, would we not be without any appreciable example where want of malice may be shown not to exist, where there is want of probable cause? Probably the question is not a very practicable one, as we suppose malice in most cases, though it must be found by the jury, would necessarily follow from proof of want of probable cause. Another rule we deduce from the Illinois cases is, that where there is proof of probable cause to institute the prosecution, then no recovery against such an one can be had, no difference how much malice may be shown.

It being a privileged matter for any person to cause legal measures to be instituted for the punishment of crimes, the parties so commencing it can not be held liable in case of malicious prosecution, unless there is malice and want of probable cause concurring. The policy of the law is to favor prosecution for crime and it will afford such protection to the citizen who prosecutes as is essential to public justice. Richey v. McBean, 17 Ill. 63. To justify prosecution there must be honest belief and strong ground of suspicion of the guilt of the accused, and reasonable grounds for such belief or suspicion, etc.

The following cases will be found to cover the points above

suggested : Jacks v. Stimpson, 13 Ill. 701; Anderson v. Friend, 71 Ill. 475; Angelo v. Faul, 85 Ill. 106. Want of probable cause can not be inferred from malice. Wade v. Walden, 23 Ill. 425; McBean v. Ritchie, 18 Ill. 114; Mitchinson v. Cross, 58 Ill. 366; Thompson v. Force, 65 Ill. 370; Montross v. Bradsby. 68 Ill. 185 ; Krug v. Ward, 77 Ill. 603; Hirsh v. Feeney, 83 Ill. 548; McDavid v. Blevins, 85 Ill. 238.

If the case under consideration had been one for malicious prosecution we think, under the circumstances, there was reasonable proof of probable cause. This being so, and the rule. of law analogous and applicable to the case at bar, we think that the communication is privileged if made in good faith, in the prosecution of an inquiry regarding a crime that has been committed, and for the purposes of detecting and punishing the criminal. Carnes v. Whitaker, 123 Mass. 342. The slanderous words in the above case were spoken to a mere neighbor, whom the defendant had called on to consult concerning the plaintiff.

The purpose of the defendant in that case was to see if his neighbor could aid him in detecting the thief. This was held to be privileged.

A party interested in a crime, one who loses goods by theft, may charge the supposed thief with the larceny, even in the presence of others, even those not officers of the law, and claim the privilege, the jury being left to judge whether the charge was made in good faith or not. Billings v. Fairbanks, 136 Mass. 177.

One may charge another with crime by informing another and seeking his advice by way of investigating the falsity or truth of the charge, even in the presence of third persons, and still claim the privilege. Gurnes v. Coyle, C. B. Monroe, 304; Townsend on Slander and Libel, Sec. 209; Odger on Slander and Libel, Sec. 219 (2d Ed.), 157 ; Toogood v. Spyring, 1 Cr. M. & R., and 4 Lynn, 582. This last case seems to have been a pioneer in announcing the doctrine and is quoted in almost all subsequent cases on the same subject. Baron Parke says : " I am not aware that it was ever deemed essential to the protection of such a communication that it should be made to

some person interested in the inquiry alone, and not in presence of third persons. If made with honesty of purpose to a party who has an interest in the inquiry (and that has been very liberally construed), the simple fact that there has been some casual bystander can not alter the nature of the transaction."

The appellee's counsel quotes the following passage from Townsend on Slander and Libel (Townsend on Slander and Libel, 2d Ed., Sec. 288), viz.: "If the court decides the publication is conditionally privileged, then it is a matter of law for the court to determine whether there is any intrinsic or extrinsic evidence of malice," and insist that to be the law here.

We do not think that the above extract is in accordance with the law in this State, as declared by the opinions of the Supreme Court. Malice in actions of this nature, when not implied as a matter of law, is a question for the jury, and contains no such exception as the above suggests.

The law in this State is, that the court determines the question as to whether the occasion is one of privilege, and the question of whether the communication was made in good faith to forward legal investigation, or to discover the guilty party, or other justifiable purposes, or whether it be made use of to vent malice, is a question for the jury.

The only two occasions where it is claimed the slanderous words were spoken are as follows: First, when constable Emery Wilmarth was present some three or four weeks after the shooting, where was also present Lewis M. Gross. In this conversation appellant said to Gross in reply to what he had said that it was pretty rough to be shot down in one's own house; that is, "it seems a great deal worse being done by one's own family;" after that, as Gross swears, "There was some talk about a detective that was sent out here, and I don't remember just exactly the conversation, but he was the subject of the conversation; we all seemed to think that was evidence bearing on the case, and she said that had been her opinion from the first, and she further stated that, 'If it is Johnnie, I want to see him punished.'" It must be borne in

mind that Wilmarth, who was a constable, had been at the
scene of the shooting within an hour after it took place, for
the purpose of finding out who was the criminal, and appel-
lant at that time made, in substance, the same statement that
she did in the presence of Gross.

According to the evidence of Wilmarth he was there both
times "for the purpose of finding out the person who com-
mitted the crime if I could; as such officer (constable) made
inquiries of appellant whether she had any knowledge; that
is what I tried to find out." On the second trip he took
Gross, who was a school teacher, down with him. It seems
that Gross, too, was playing the detective and questioning the
appellant and discussing the case.

The second occasion where the alleged slanderous words
were spoken was the third day after the shooting took place;
she then, in appellee's presence and King's, who went with
appellee to his mother's house, charged him with the crime.
Her words were, there, as stated by appellee on the witness
stand, "There is only two mean enough to do it, and Johnnie is
one of them;" and then said, "Johnnie is the only one that
would do it, and he is the one that did do it." Appellee took
King with him and the statement was made in response to the
question that King asked her; it was this: "Had she any
idea who did it, or something of the kind;" in answer she
made the response in question.

These are the words relied on for recovery. We do not
think that on either occasion, according to the rules of law
above laid down, the circumstances in either case were such
as to deprive the appellant of the right to invoke the rules of
law applicable to privileged communications. The first, it
seems to us, was clearly within the rule, and the last, while
probably not quite so clearly so, yet fairly within it, as
announced in Toogood v. Spyring, *supra*, and other cases
cited.

The appellee's counsel quotes some passages from adjudged
cases and text books that may seem to be somewhat in con-
flict with the law in the cases above cited, but when properly
understood with reference to the subject-matter of the cases

decided, are not materially so.  We think that in accordance with the spirit of the law which encourages the detection and punishment of crime, and where its execution almost entirely depends upon some private person, as is the case in this country, to institute inquiry and prosecution, the rule of law should be liberally construed to protect one, and especially an interested person who is honestly endeavoring to right his own wrong or to execute the law.

And such we understand to be the spirit of the decisions of our Supreme Court.

It follows that the sixth instruction given for appellee, which tells the jury if they " believe from the evidence that any one or more sets of the slanderous words alleged in the declaration had been proved to have been spoken by the defendant as therein charged, and that the defendant thereby intended to impute to the plaintiff the crimes mentioned in the declaration, then and in that case, the law conclusively implies malice and you should find for the plaintiff, even though you should further believe from the evidence that the defendant at the time of the speaking of the slanderous words, believed them to be true."

This instruction cuts off the entire defense.  It is a construction by the court that the occasion of the uttering of the words was not such as to make them in any way privileged, because that question is entirely ignored by the instruction; and the question of express malice is taken from the jury and they are ordered to conclusively presume malice from the speaking of the words.

We need not consider the appellant's refused instructions as those given by the court on the part of the appellee, together with the insufficiency of the evidence, are cause for reversal.  Finding that the words charged to be slanderous were spoken under circumstances which rendered them conditionally privileged and where there was probable cause, and that they were uttered by appellant without malice, and also finding that no recovery can rightfully be had under the evidence in the case, the judgment of the court below is reversed without any remanding order.

*Judgment reversed.*