John McDavitt

*v.*

Thomas J. Boyer.

*Opinion filed November 8, 1897.*

1. Slander—*law does not imply malice from actionable words uttered in privileged communication.* The rule that spoken words imputing a crime punishable with imprisonment are actionable *per se*, without proof of malice or special damage, does not apply where the words are uttered in a privileged communication.

2. Same—*privileged communication—slander will not lie for language used in giving testimony.* An action for slander will not lie for words used by a witness in giving testimony in a judicial proceeding, if the testimony is pertinent and material to the subject of inquiry, notwithstanding it may be malicious or false.

3. Same—*words used by party acting as his own attorney are not actionable per se.* Statements made by a party acting as his own attorney in judicial proceedings, including preliminary hearings on criminal complaints before a justice of the peace, which are pertinent and material to the matter in controversy, are not actionable *per se*.

*McDavitt* v. *Boyer*, 67 Ill. App. 452, reversed.

Appeal from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Edgar county; the Hon. F. Bookwalter, Judge, presiding.

This is an action on the case, brought by appellee against appellant for slander. The trial resulted in verdict and judgment against appellant. A new trial was refused, and judgment was rendered upon the verdict. An appeal was prosecuted to the Appellate Court. The Appellate Court has affirmed the judgment of the circuit court; and the present appeal is prosecuted from such judgment of affirmance.

The declaration consists of three counts. The alleged slander, as set up in the first two counts, consists of a charge that the plaintiff had committed perjury. The third count avers, that the appellant had charged the

appellee with the commission of the crime of subornation of perjury. The plea of not guilty was filed by the appellant here, the defendant below; and it was mutually agreed, that any evidence might be admitted under the plea of not guilty, which would be admissible under any special plea well pleaded.

The appellant and the appellee are both farmers, living in Edgar county, and having farms which adjoin each other, or which are separated only by a public road. Several suits of a petty kind between the parties had been tried before justices of the peace, and in the county court. The appellee, Boyer, in one of these suits sued the appellant McDavitt to recover damages, alleged to have been committed by appellant's hogs in appellee's cornfield. It was alleged, that the hogs of appellant had trespassed upon the field of appellee, and had destroyed corn, amounting to one hundred and twenty-five bushels. This suit resulted adversely to appellant, and was appealed to the county court, where another trial was had, which resulted in judgment against him and in favor of appellee. Appellant brought suit against the appellee to recover damages, claimed to have been sustained by reason of a trespass committed by the bull of appellee. Upon the trial of the latter suit, the appellee and his sons and sons-in-law swore, that the bull belonged to Mrs. Boyer, and not to the appellee; that, when appellee was married twenty-eight years before that time, his wife's father had given her a cow which was afterwards sold, and that in March, 1892, appellee bought the bull in question, and took it home, and gave it to his wife in place of the cow, which he had sold some twenty-six years before that time. Appellant was defeated in this suit also.

In the suit brought by appellee against appellant for damages done by the hogs to appellee's corn, testimony was taken as to the value per bushel of the corn so destroyed. Before the beginning of either of the two suits last named, Mrs. Boyer, the wife of the appellee, had

brought a replevin suit against the appellant for some turkeys.

The suit at bar was begun on March 23, 1895. On March 21, 1895, a warrant was sworn out by the appellant against the appellee before a justice of the peace, named Flenner, charging appellee with perjury. A change of venue was taken from Flenner, who lived in the same township with both of the parties, to another justice of the peace, named Hogue, who lived in the township of Kansas. On the next day, March 22, 1895, a preliminary hearing was had before Hogue on the charge of perjury and subornation of perjury preferred against appellee by appellant. It was charged, that the appellee had sworn falsely upon the trial of the suit for damages, claimed to have been done by appellant's hogs, in this: that, upon the trial of that suit, appellee swore that he sold the balance of the corn not destroyed by the hogs to one Early Pinnell for 32 cents per bushel. Upon the trial of the present case, Early Pinnell swore that he did not pay appellee 32 cents per bushel for the corn, but that what corn he purchased he bought of one Shepherd, and paid 30 cents per bushel for it. It is admitted by appellee, that he did not sell the corn to Pinnell for 32 cents per bushel. In the case at bar, appellant and four other witnesses swear that, upon the trial of the suit for damages done by the hogs, appellee swore that he did sell the corn to Pinnell at 32 cents per bushel. One of the witnesses, testifying that he did so swear, was a juror, who sat upon the trial of the case when it was tried, upon appeal, in the county court. On the contrary, appellee and his sons, and two sons-in-law, and two other witnesses, swear that appellee did not testify upon the trial of the suit, that he sold the corn to Pinnell at 32 cents per bushel, but that he merely testified, that he understood corn to be worth 32 cents per bushel, and that Pinnell had paid that price for corn raised upon the same place. The main charge made by appellant against appellee upon

the preliminary hearing before the justice was, that he had sworn falsely in stating that he had sold the corn for 32 cents per pushel.

. Appellant also charged, that appellee had sworn falsely, in the suit brought by appellant for damages done by appellee's bull, in stating that his (appellee's) wife owned the bull, and that he (appellee) was not himself the owner of it; and in also stating, that the hedge fence around appellant's farm was only two and one-half feet high, when the same was four feet high. Appellant introduced testimony, tending to show that appellee had always treated the bull as his own individual property, and had admitted in testimony, given by him in the replevin suit, that all the cattle and horses and hogs on his place belonged to himself, while the chickens and turkeys belonged to his wife.

The following testimony was given upon the trial of the present suit by witnesses introduced by the plaintiff below, the appellee here:

The justice, Flenner, testified: "McDavitt came to me and asked for a warrant; wanted to file a complaint against Boyer for the crime of perjury and subornation of perjury; * * * he said Boyer had perjured himself, and caused others to do so; * * * he said he wanted a warrant for both these charges; * * * I filled out the complaint, and he signed it; * * * this was the day before the trial before Hogue."

The appellee, Boyer, testified as follows: "While going on with the trial, he made remarks divers times, that I had sworn to a lie and perjured myself; * * * McDavitt was acting as a lawyer there, prosecuting the case; he examined and cross-examined the witnesses, and made an argument in the case; McDavitt did not to me, nor in my hearing, before the trial charge me with perjury or subornation of perjury; I could not say that, after the trial was over, McDavitt charged me with perjury or subornation; he used this language several times during the

trial of the case; the first thing he said was, that I had sworn to a lie, and that he could prove it. * * * I am usually known as 'Pete.'"

William Bishop testified: "Did not hear any statements made by defendant except at the trial; * * * he said Mr. Boyer had sworn to a lie; * * * on the witness stand he said Boyer had perjured himself; * * * McDavitt was prosecuting the case himself; do not think he had any assistance; all he said about Boyer was said during the trial."

James F. Hogue, the justice, testified: "This preliminary hearing of Mr. Boyer was before me at Kansas on March 22, 1895; McDavitt said that Boyer had committed perjury; that he had sworn falsely; he said he could prove it, if I allowed him to; * * * this was during the trial, and he was conducting the prosecution; and those words were spoken to me as justice, holding the examination, and during the trial; they were merely directed to me."

Joseph Glover, a son-in-law of the appellee, testified: "McDavitt said that Boyer had sworn to a lie about that corn and about the bull of his wife; * * * he made these statements three or four times during the trial; * * * I am not positive that he said anything after the trial."

Charles E. Smith testified: "I attended the preliminary hearing at Kansas before Hogue last spring; at that trial McDavitt said several times, that Mr. Boyer had sworn to a lie, and he could prove it; * *. * most of the time those assertions were made, McDavitt was acting as his own attorney; he made those statements to Headley; * * * Mr. Headley was acting as Boyer's attorney."

Frank Gross, Lee Stutsman, John Boyer, and Walter Boyer, the two last being sons of the appellee, and Frank Cortie, a son-in-law of the appellee, all testified, that they were present at the hearing before the magistrate, and that, during the preliminary trial there, McDavitt said

that Boyer had sworn to a lie; and that what he thus said was said during the progress of the trial.

Henry S. Tanner, and Joseph E. Dyas, for appellant.

S. I. Headley, and F. W. Dundas, for appellee.

Mr. Justice Magruder delivered the opinion of the court:

One of the errors assigned by the appellant is, that the trial court erred in giving the instructions to the jury, which were given for the appellee. The first instruction told the jury, that, if they believed from a preponderance of the evidence, that the defendant spoke and published of and concerning the plaintiff the words charged in the declaration, or some set of words as therein charged, then the law presumes they were spoken maliciously, and with a view to defame and injure the plaintiff; and that this presumption of law can only be rebutted by evidence showing otherwise.

The second instruction contained the following words: "All the plaintiff is bound to prove on his part, to entitle him to recover in this case, is the speaking by the defendant of enough of the slanderous words, charged in the declaration, to amount to a charge of perjury, or a charge of subornation of perjury, against the plaintiff, as set forth in some one or more set of words, as alleged in the declaration; and if the jury believe from the preponderance of the evidence, that the defendant is guilty of the speaking of the slanderous words, or some one or more sets of words, as charged in the declaration, of and concerning the plaintiff, then express malice or ill-will need not be proved."

The third instruction tells the jury that, if they "believe from a preponderance of the evidence that the defendant, in speaking of the plaintiff in the presence and hearing of others, used the words: 'Pete Boyer swore to a lie,' or 'Pete Boyer committed perjury when he swore

what that corn was worth,' etc.,  *  *  *  then the words
are actionable in themselves, and the law implies, that
they were used with a malicious intent to defame the
character of the plaintiff, and express malice need not
be proved."

Under the facts of this case, these instructions were
clearly erroneous, and prejudicial to the appellant. It is
true, as a general rule of law, that, if words are in them-
selves actionable, malicious intent in publishing them is
an inference of law, and therefore needs no proof. In an
action of libel or slander, where an injury is done to the
reputation of the plaintiff by a false statement, whether
it be malicious or not, malice need not be proved. Gen-
erally speaking, every defamation is presumed by the
law to be malicious. It is also laid down in the author-
ities, that spoken words, imputing a crime punishable
with imprisonment, are actionable without proof of spe-
cial damage. (2 Greenleaf on Evidence,—15th ed.—sec.
418, and notes; 13 Am. & Eng. Ency. of Law, pp. 296-298,
347; Newell on Def., Slander and Libel, p. 319).

But this general rule is subject to the important quali-
fication, that, where the injurious utterance is privileged,
the law does not presume malice; and express malice must
be proved by the plaintiff. Privileged communications
constitute an exception to the general rule, that the ut-
terance of actionable words implies malice. Such privi-
leged communications are presumed not to be malicious;
in other words, the law does not imply malice, when the
injurious communication is privileged. In such case, the
occasion, on which the utterances are made, prevents
the ordinary inference of malice. Greenleaf in his work
on Evidence says: "If the circumstances of the speaking
and publishing are such as to repel that inference and
exclude any liability of the defendant, unless upon proof
of actual malice, the plaintiff must furnish such proof."
(2 Greenleaf on Evidence,—15th ed.—sec. 418). When a
communication is shown to be privileged, the burden of

proof is on the plaintiff to show actual malice on the part
of the defendant. "Communications within the privilege
are not actionable merely because they are false and de-
famatory, but express malice must be shown." (13 Am. &
Eng. Ency. of Law, pp. 405, 406; 1 Hilliard on Torts,—4th
ed.—334-336; Newell on Def., Slander and Libel, p. 319).

The question then arises, what are privileged com-
·munications within the signification of the term as ap-
plicable to cases like the present; in other words, when
are injurious utterances privileged, so as to prevent the
inference of malice? In the first place, such privilege
belongs to a witness, testifying upon the stand in a court
of justice. ˙ No action for slander will lie against a wit-
ness for what he says or writes in giving evidence in a
judicial proceeding, notwithstanding it may be malicious
or false. The privilege, that exempts a witness from such
action, is absolute. An action of slander will not lie for
testimony given in a case, if such testimony is pertinent
and material to the subject of inquiry. No witness should
be compelled to take the stand with the fear hanging
over him, that an action of slander may at some time be
brought against him for what he says as a witness. Pub-
lic policy and the interests of public justice require, that
statements, made by witnesses when testifying in courts
of justice, should be privileged, and that witnesses should
not be liable in civil actions for reflections thrown out in
delivering their testimony. A witness should be encour-
aged to tell the truth by the knowledge, that no action
for slander can be maintained against him, unless he
takes advantage of his ·position as a witness to assail
wantonly the character of another, and to tell maliciously
what he knows to be false in regard to a matter that is
not relevant to the subject of inquiry. (13 Am. & Eng. ·
Ency. of Law, p. 408; *Hunckel* v. *Voneiff*, 69 Md. 179; Town-
·shend on Slander and Libel,—4th ed.—sec. 223; Hilliard
on Torts,—4th ed.—sec. 339; Cooley's Const. Lim.—6th ed.
—p. 542). Cooley, in his work on Constitutional Limita-

tions, (p. 542, *supra*,) says: "Among the cases which are so absolutely privileged on reasons of public policy, that no inquiry into motives is permitted in an action for slander or libel, is that of a witness giving evidence in the course of judicial proceedings.    It is familiar law, that no action will lie against him at the suit of a party aggrieved by his false testimony even though malice be charged."

Privileged words are also those, which are used by a party, or by counsel, or by a party acting as his own counsel, in judicial proceedings, including preliminary inquiries as to crime before justices of the peace.   The same reasons, based upon public policy and upon the necessity for a fearless administration of justice, apply here as in the case of witnesses.   Whatever is said or written in a legal proceeding, pertinent and material to the matter in controversy, is privileged, and no action can be maintained upon it.   (*Spaids* v. *Barrett*, 57 Ill. 289; *Strauss* v. *Meyer*, 48 id. 385.)   Malice cannot be predicated of what is said or written in a proceeding in a court of justice. Words, spoken to a magistrate in the course of a judicial proceeding, though they may be slanderous and malicious, are not actionable.   The same is true, when complaints are made against an individual for alleged offenses before a judicial officer, provided such complaints are honestly presented.   In such case, they do not render the party making them liable for slander.   What counsel says in the argument of a case is absolutely privileged, when it is connected with, and pertinent to, the inquiry involved in the suit.   Counsel cannot be sued for defamatory statements made in the trial of a cause before a court of competent jurisdiction.   The same privilege is extended to a party, who acts as his own counsel, and manages his own case before a judicial tribunal.   Where a party conducts his case in person, he is not liable to an action of slander for what he says in the course of the proceeding, so far as his statements are necessary to

maintain his suit or his defense. The same privilege extends to a party to a suit in a court of justice when he is not acting as his own counsel. He is not liable to be sued for slander for any statement which he may make in good faith in relation to the matter there pending. (1 Hilliard on Torts, pp. 336-338; Cooley's Const. Lim.—6th ed.—p. 544; *Hoar* v. *Wood,* 3 Metc. 193; *Hastings* v. *Lusk,* 22 Wend. 410; 2 Greenleaf on Evidence,—15th ed.—sec. 421; Thompson on Slander and Libel,—4th ed.—secs. 220, 224, 224 *a; Cristman* v. *Cristman,* 36 Ill. App. 567).

The leading case upon this subject in this country is the case of *Hoar* v. *Wood, supra,* the opinion in which was delivered by Chief Justice Shaw. In that case, the words alleged to be slanderous were spoken whilst the plaintiff was under examination as a witness in the trial before a justice of the peace, on a complaint in behalf of the commonwealth, in which the defendant was the complainant, and in which he was managing the prosecution and examining the plaintiff as a witness. The defendant there insisted, that the occasion of speaking the words was such as to rebut the presumption of malice, and that the plaintiff could not recover without proving express malice and want of probable cause; and the defendant asked for instructions to that effect, which were refused by the trial court. In the opinion in that case reversing the judgment of the lower court, it was held to be a rule well settled by the authorities, that words spoken in the course of judicial proceedings, whether addressed to a witness, or to the court, or to the jury, even though they are such as to impute crime to another, and, therefore, if spoken elsewhere, would impute malice and be actionable in themselves, are not actionable if they are applicable and pertinent to the subject of inquiry. It was also there held, that, where in the absence of the public prosecutor, a complainant is acting as party or counsel in the management of a criminal prosecution before a magistrate, either as a matter of right, or by permission of the

magistrate, he is entitled to the same privilege as a party or counsel in other judicial proceedings.

Where a defendant went before a justice of the peace and demanded a warrant against the plaintiff for stealing his ropes, and said: "I will charge him with flat felony for stealing my ropes from my shop;" in an action for slander for speaking these words, it was held that, as they were spoken to a justice of the peace on application for a warrant, they would not support an action for slander. (Thompson on Slander and Libel, sec. 220). Nor will an action for slander lie for a charge of a criminal offense made to a magistrate upon which a warrant issues, although the accused is discharged after examination. (Ibid. note 2).

The evidence in this case shows, that nearly every utterance, made by the appellant which charged the appellee with perjury, was made, either while he was suing out a warrant from the magistrate for the arrest of the appellee upon a charge of perjury, or while he was conducting the prosecution against the appellee upon such charge before a magistrate both as party and as his own counsel, or while he was testifying as a witness upon the stand upon such hearing before the magistrate. In the absence of the prosecuting attorney, the appellant was permitted to manage the case as his own counsel, and he examined the witnesses and argued the case himself. Mere proof of what he uttered under these circumstances was not *prima facie* proof of malice. The utterances thus made did not of themselves imply malice. On the contrary, in view of the fact that the injurious statements which appellant is charged with making, were made in the course of a judicial proceeding, both as witness, and counsel, and party, the presumption was against malice. Therefore, the burden of proof rested upon the appellee to prove actual malice. In order to have the question of malice left to the jury, the appellee may not have been obliged to show circumstances necessarily leading to the

conclusion that malice existed, but he was obliged to show such circumstances as raised a probability of malice. (1 Hilliard on Torts, p. 336). But the instructions to the jury in this case ignored altogether the fact that the utterances of appellant were made in the course of, or as a part of, judicial proceedings, and therefore privileged. The instructions for the appellee given by the trial court proceeded upon the theory that, as soon as the plaintiff proved what the appellant said, the utterances themselves, without regard to their privileged character, raised a presumption of malice. These instructions told the jury in so many words, that the appellee was not bound to prove express malice. Under the view of the law as above laid down, the obligation to prove express malice clearly rested upon appellee. As the instructions given for the plaintiff were erroneous in the respect thus indicated, the judgments of the Appellate Court and of the circuit court are reversed, and the cause is remanded to the circuit court for further proceedings in accordance with the views herein expressed.

*Reversed and remanded.*