## Edwin G. Young v. Axel N. Lindstrom.

### Gen. No. 4,311.

1. MALICIOUS PROSECUTION—*what essential to recovery in action for.* In order to recover in an action on the case for malicious prosecution, it is essential that the plaintiff prove that there was no probable cause for instituting the criminal proceeding; and the burden of making such proof is upon him.

2. MALICIOUS PROSECUTION—*what establishes defense to action for.* Where the defendant in an action for malicious prosecution before instituting the criminal proceeding in question, consulted a lawyer whose ability, fairness and integrity are not questioned, explained to him fully all the facts and circumstances of the case and was advised to proceed, a defense is established.

3. PROBABLE CAUSE—*how question of, determined.* While it is for the jury to determine the facts in evidence in any given case, what constitutes probable cause is a question of law.

4. PRIVILEGED COMMUNICATIONS—*how classified.* Privileged communications are of two kinds: absolute and qualified. An absolute privilege is confined to cases where the public service or the due administration of justice requires that a party speak his mind freely, and no action can be maintained therefor even though the words be false and maliciously spoken. Occasions where the privilege is qualified extend to a variety of communications made in good faith and from honest motives, upon any subject in which the party communicating has an interest or in reference to which he has a duty to some one having a like interest or duty. On such occasions a speaker is exempt from liability only so far as he speaks honestly and for some common good. (See reporters' note.)

5. PRIVILEGED COMMUNICATIONS—*how question of, determined.* Whether a communication is or is not privileged is a question of law

for the court. If it is held that a privilege is a qualified one, then it is for the jury to determine whether the defendant in uttering the words was actuated by honest motives for some good or proper purpose or by a malicious desire to injure and defame the plaintiff.

Action on the case for malicious prosecution and slander. Appeal from the Circuit Court of Will County; the Hon. DORRANCE DIBELL, Judge, presiding. Heard in this court at the October term, 1903. Reversed and remanded. Opinion filed June 8, 1904.

DONAHOE & McNAUGHTON, for appellant.

REYNOLDS & PURKHISER, for appellee.

MR. JUSTICE FARMER delivered the opinion of the court.

This is an action on the case brought by plaintiff, appellee here, against the defendant, appellant, in the Circuit Court of Will county. The first and second counts of the declaration are for malicious prosecution and false imprisonment. The third and fourth counts are for slander. A trial by jury resulted in a verdict for the plaintiff for $450, upon which the court, after overruling a motion for a new trial, rendered judgment and defendant appealed.

Defendant opened a meat market in Lockport, November 16, 1901, for the purpose of retailing meats. He also kept some groceries. The business was carried on in a building owned by defendant. Plaintiff was employed to work for defendant in the meat market at a salary of $11 per week, which was paid every Saturday night, and continued in this employment until the 18th day of February, 1902. He was the only employe in the business and his duty was to remain in the store and wait on customers, weighing out meat to them and receiving pay therefor, while defendant drove a wagon and delivered meats to customers, and looked after the other outside affairs of the business. He was not in the shop a great deal of the time except while plaintiff would go home to his meals and at nights. Defendant did a cash business except that occasionally a customer would buy meat without paying for it, and this would be entered in a small book or ledger kept for that purpose. Between the time of the opening of the business and the 18th day

of February, 1902, when plaintiff quit his employment, defendant took three inventories of stock, which he swears, and in this is not contradicted, disclosed that he was making no money. He appears to have talked with plaintiff about the unprofitableness of the business, but said nothing about what he attributed it to. As he was doing a cash business and paying no rent he became suspicious that plaintiff was using money from the cash drawer. Afterwards a few incidents occurred which so aroused his suspicion that he consulted an attorney named North, about causing plaintiff's arrest, and was advised that the circumstances he related were not sufficient to authorize the arrest of plaintiff. Defendant continued the business with plaintiff as his only clerk till February 18. Between the time he first consulted attorney North and this date, other things not necessary here to set out in full, but which we have read with much care, occurred, which increased defendant's suspicions, and on February 18 he again consulted Mr. North and was then advised that the facts related by him were sufficient to justify causing the arrest of plaintiff for larceny. Mr. North had practiced law for seven years, was at the time assistant state's attorney and had held the position of village attorney, town clerk, and attorney for the board of highway commissioners for his township. Thereupon defendant went before a justice of the peace, sued out a warrant and placed it in the hands of an officer. There is some conflict in the testimony of the defendant and the officer as to what instructions defendant gave to the officer at the time he delivered the warrant to him, but it appears from the evidence that defendant did not desire plaintiff to be taken immediately in custody and removed from the store. The officer preceded defendant to his place of business where he found plaintiff alone and informed him of the warrant being in his hands. Very soon after the officer's arrival, defendant and the justice who issued the warrant came, and on entering the store defendant locked the door, and pulled the curtains down. A conversation was had there principally between plaintiff

and defendant in which plaintiff was told by defendant of the charge against him and the warrant. Defendant accused plaintiff of being a thief and of having robbed him, or stolen from him. It was finally arranged that plaintiff should go to his home and get some money he had there, amounting to $45, and deposit it with McDonald, the justice who issued the warrant and who was there present. Plaintiff claims that this deposit was made as security that he would appear before the justice to answer to the charge, while defendant claims it was placed in the hands of the justice to remain until he could take an invoice and determine the amount he had lost, and out of the deposit the loss was to be made good. The receipt given plaintiff by Justice McDonald was introduced in evidence and was as follows: " Received of Alick Lindstrom, forty-five dollars, to be held by me until settlement is made between Lindstrom and Young." Plaintiff was then allowed to go and the following entry was made by the justice in his docket: " This case continued pending a settlement, 18th Feb." On the following day this entry was made by the justice in his docket: " This case dismissed by prosecuting witness Ed. G. Young," and thereafter no further steps were taken. February 20, plaintiff's attorney called on Justice McDonald at his house, and demanded the $45 that had been deposited with him. The justice did not there return the money, but together they went to defendant's place of business and there he turned over the $45 to plaintiff.

By their verdict the jury found the defendant guilty under the first, second and fourth counts, and not guilty under the third. We are of opinion the evidence in this record was wholly insufficient to authorize a verdict of guilty under the first and second counts. To warrant a recovery under those counts it was incumbent upon the plaintiff to prove that there was no probable cause for instituting the criminal proceeding. It was not enough to prove that he was not guilty of the charge. If the defendant acted in good faith upon probable cause then there could be no recovery under the first and second counts.

" Probable cause has been defined by this court, to be a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense charged." Palmer v. Richardson, 70 Ill. 544, and cases there cited. " The one most important element is, want of probable cause for suing out the writ. Malice is unimportant, if there be probable cause. It is a rule of law, that malice and want of probable cause must both be present. The gist of the action is, that the prosecutor, or party suing out the writ, acted maliciously, and without probable cause. If there is no malice, or if there be, and there was probable cause, the action will not lie." Barrett v. Spaids, 70 Ill. 408, and cases there cited. " To maintain an action for malicious prosecution, it must appear that there was no probable cause for the prosecution, and also that the defendants were actuated by malice in instituting the prosecution." Harpham v. Whitney, 77 Ill. 32.

Although defendant may have been entirely innocent of the charge brought against him, and we must presume that he was, the burden was on him to prove by a preponderance of the evidence that there was no probable cause for instituting the prosecution. In Ross & Co. v. Innis, 35 Ill. 487, opinion by Mr. Justice Breese, it is said : " The *onus* is upon the party bringing the action to show that the criminal prosecution was the offspring of malice and without any probable cause to justify it—that the prosecutor had no sufficient reason to believe the accused guilty. The want of the element, probable cause, is the main ground of this action, and it must be clearly shown." " The law casts the burden of proof upon appellee to show clearly that appellant did not have probable cause to institute the criminal prosecution." Davie v. Wisher, 72 Ill. 262, and cases there cited. There is an utter absence of any evidence to show that defendant had any malicious or unfriendly feeling toward plaintiff except such as was excited by his suspicion that plaintiff was taking money from his cash drawer. While it is true the circumstances which caused defendant to sus-

pect plaintiff are not irreconcilable with entire innocence
of plaintiff and may have been subject to such explanation
as to be wholly insufficient to have caused his conviction,
yet it cannot be said that they were not calculated to cause
a reasonably prudent and cautious man to believe that the
plaintiff was guilty.   Defendant twice consulted a lawyer,
who acted in the capacity of assistant prosecutor for the
people of his county, and was advised before he instituted
the proceeding that the circumstances were sufficient to
justify arresting plaintiff on the charge of larceny.   The
evidence shows that defendant informed Mr. North of all
the facts and circumstances within his knowledge and nei-
ther misrepresented nor concealed anything.   It does not
raise a suspicion that he was actuated by any malicious
purpose simply to injure plaintiff.   Neither the ability, in-
tegrity, nor fairness of attorney North is questioned.   His
position would indicate he was peculiarly well qualified to
advise in just such matters as defendant consulted him
about.   If the facts and circumstances when related to him
caused the belief in his mind that there was probable cause
for the arrest of plaintiff it certainly cannot be said that
they were not sufficient to cause the same impression in the
mind of defendant.   The evidence warrants the conclusion
that but for the advice of Mr. North, the criminal prosecu-
tion would not have been instituted.   In Anderson v.
Friend, 85 Ill. 135, it is said: "It has been uniformly held
that, where the prosecutor fairly presents all the facts to a
respectable practicing attorney, who from the statement of
facts, advises they are sufficient to warrant a prosecution,
the prosecutor is protected against a suit for malicious
prosecution, and, from the very nature of our criminal
laws, it must be so, otherwise there would be no safety
in originating such proceedings.   But few persons outside
of the profession can determine, in many cases, whether
the facts will justify a criminal conviction; but it is to be
presumed that all respectable attorneys in full practice
do know, and it is their duty to fairly and honestly ad-
vise in these as in all other cases; and if the prosecutor

may not safely act upon such advice, then he has to almost guarantee a conviction when he starts a prosecution. The criminal law must be enforced, and human agencies must be employed for the purpose, and the law wisely protects all persons who in good faith act on reasonable presumption of the guilt of the accused; and where the prosecution is commenced on the advice of respectable counsel, after fairly presenting to his consideration all the facts, and he advises that they are sufficient, it cannot be held the prosecution is groundless and there is a want of probable cause." The same rule is announced in the same case in 71 Ill. 475, and numerous cases there cited in support of it. In Neufeld v. Rodeminski, 144 Ill. 83, the court say: " The law upholds and favors prosecutions under the public laws of the land, and shields and protects parties instituting them in good faith and from proper motives. So where the party consults with counsel of good standing, and lays before him fully the facts within the party's knowledge, and then acts in good faith, and in the honest belief that the party charged is probably guilty of a criminal offense, he will not be held responsible if it shall turn out that the party is not guilty." While it is for the jury to determine the facts in any given case, what constitutes probable cause is a question of law. Angelo v. Faul, 85 Ill. 106; Wade v. Walden, 23 Ill. 369; C., C., C. & St. L. Ry. Co. v. Jenkins, 75 Ill. App. 17. It seems clear to us that under the evidence in this case there can be no recovery under the first and second counts of the declaration.

The words alleged to have been used by defendant and counted on in the fourth count of plaintiff's declaration, were substantially that plaintiff was a thief and had been robbing defendant. We have heretofore described the occasion and circumstance under which the words were used. No one was present besides plaintiff and defendant, except the magistrate who issued the warrant, and the officer to whom it was delivered. It is contended by counsel for defendant that the communication was privileged. Privileged occasions are of two kinds: absolute and qualified. Absolute

privilege is confined to cases where the public service, or due administration of justice, requires that a party speak his mind freely, and no action can be maintained therefor even though the 'words be false or maliciously spoken. Occasions where the privilege is qualified extend to a variety of communications made in good faith and from honest motives upon any subject in which the party communicating has an interest or in reference to which he has a duty to some one having a like interest or duty. Newell on Defamation, Slander and Libel, chap. 19; Odgers on Libel and Slander, 196. On such occasions the speaker is exempt from liability only so far as he speaks honestly and for some common good. If it appears that the words were not spoken in good faith, but with a malicious motive and with intent to injure, the party uttering them cannot avail himself of the privilege. It has been held often that public policy requires that communications which would otherwise be slanderous are privileged, if made in good faith in the prosecution of an inquiry regarding a crime which has been committed and for the purpose of detecting and bringing to punishment the offender. It was said by Lord Ellenborough in Delaney v. Jones, 4 Esp. 191: "If done *bona fide*, as with a view of investigating a fact in which the party making it is interested, it is not libelous." In Brow v. Hathaway, 13 Allen, 239, it was held that one who has lost goods by way of theft may accuse the person suspected and if the accusation is made in good faith, without malice and with the belief that it is true, the communication is privileged.

In Eames v. Whittaker, 123 Mass. 342, the declaration charged defendant with having said plaintiff had broken into his house and robbed it, and that he had entered defendant's house and stolen his and his son's money. Plaintiff proved the uttering of the words to him in the presence of three witnesses, two of whom were constables to whom defendant had applied to make an arrest under a warrant issued by a magistrate on defendant's complaint. It was claimed by defendant that the words were privileged, and

the court say: "Upon grounds of public policy, communications which would otherwise be slanderous are protected as privileged, if they are made in good faith in the prosecution of an inquiry regarding a crime which has been committed and for the purpose of detecting and bringing to punishment the criminal."

In Billings v. Fairbanks, 139 Mass. 66, plaintiff sued defendant, who was his employer, for slander in accusing him in the presence of a third person of stealing defendant's money. The court held there could be no recovery if defendant honestly believed plaintiff was guilty, and there was no malicious intent in speaking the words. The principle announced in these cases was recognized in Elam v. Badger, 23 Ill. 448, where the court say: "The doctrine is well settled that for such communications, made with honest motives and for justifiable ends, the party making them is not responsible, the case being disrobed of one important element to constitute it slander, that is, malice, either in law or fact."

In Cristman v. Cristman, 36 Ill. App. 567, after an extensive review of the authorities, English and American, it was said: "We think that in accordance with the spirit of the law which encourages the detection and punishment of crime, and where its execution almost entirely depends upon some private person, as is the case in this country, to institute inquiry and prosecution, the rule of law should be liberally construed to protect one, and especially an interested person, who is honestly endeavoring to right his own wrong or to execute the law."

The authorities hold that whether a communication is or is not privileged, is a question of law for the court. If it is held to be one of qualified privilege only, then it should be submitted to the jury whether the defendant in uttering the words was actuated by honest motives for some good or proper purpose or by a malicious desire to injure and defame the plaintiff.

To our minds it seems clear that the words complained of as slanderous, in view of the persons present and the occa-

sion of their utterance, as shown by the evidence, come within the rule of qualified privilege, and the court should have so instructed the jury, and submitted to them to determine only whether the defendant was, in good faith, actuated by honest motives, or a malicious desire to injure plaintiff. Wharton v. Wright, 30 Ill. App. 343. The occasion being one of qualified privilege the law does not imply or pre-sume malice. Under such circumstances the burden is on the plaintiff to prove the malice or he must fail in a recovery.

The judgment is therefore reversed and the cause remanded for further proceedings not inconsistent with the views herein expressed.

*Reversed and remanded.*

Mr. Presiding Justice DIBELL, having tried this cause in the court below, took no part in its decision here.

REPORTERS' NOTE. McDavitt v. Boyer, 169 Ill. 475, will be found an interesting case upon the subject as to what are and what are not privileged communications.