Hilda M. Anderson, Appellant, v. Richard Malm, Appellee.

Gen. No. 21,893.

1. LIBEL AND SLANDER, § 145*—*when evidence not sufficient to show accusation of fornication.* Evidence in an action of slander examined and *held* not sufficient to show that defendant had accused plaintiff of fornication.

2. LIBEL AND SLANDER, § 56*—*when communication privileged.* Words spoken by the pastor of a church while matters concerning a member's conduct are under inquiry at a regular meeting of the congregation are privileged and not actionable in the absence of express malice, when spoken by the pastor as pastor and presiding officer of the meeting.

3. LIBEL AND SLANDER, § 145*—*when evidence insufficient to show slander.* In an action of slander, evidence *held* to show that the utterance complained of was spoken by defendant as pastor of a congregation and presiding officer of a meeting of the congregation at which matters concerning plaintiff's conduct were under inquiry, and that they were spoken in lieu of defendant's duty.

4. LIBEL AND SLANDER, § 160*—*when questions of privileged communication and malice for court.* In an action of slander, condition of proofs at close of plaintiff's case *held* to be such as to render the questions of privileged communication and malice for the determination of the court.

5. LIBEL AND SLANDER,—*when direction of verdict proper.* In an action of slander, evidence examined and *held* to warrant the directing of a verdict for defendant.

Appeal from the Circuit Court of Cook county; the Hon. LOCK-WOOD HONORE, Judge, presiding. Heard in this court at the October term, 1915. Affirmed. Opinion filed February 14, 1916.

JAMES J. LEAHY, for appellant; ALBERT O. OLSON, of counsel.

VICTOR ELTING and CHANNING L. SENTZ, for appellee.

MR. JUSTICE HOLDOM delivered the opinion of the court.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

This is an action of slander instituted by plaintiff, a member of the First Scandinavian Church of Winnetka in Cook county, and a manicurist and hairdresser by occupation, against the defendant, the pastor of the church. Plaintiff, at the time the words complained about were uttered, was in process of being disciplined for certain alleged misconduct on her part in her relationship as a member of the church, and the question of expelling plaintiff was before a meeting of the congregation for discussion. Defendant as pastor was in charge of the meeting. The conduct of plaintiff as a creator of disturbances was discussed at the meeting. It is alleged that defendant during the meeting requested plaintiff to ask forgiveness, and plaintiff avers that what defendant said and did at that meeting amounted to charging her with being guilty of fornication. The talks at the meeting by the defendant and the church members were in the Swedish language. The culpable words spoken by defendant in Swedish are in the declaration averred to be equivalent to the following words in the English language: "Hilda Anderson is to ask for forgiveness. It is not necessary for us to talk about that" (meaning the charge for which plaintiff should ask forgiveness). "I can read it in God's word." Thereupon defendant turned to the 5th chapter of the First Epistle of St. Paul to the Corinthians (a chapter found in the New Testament division of the King James' revision of the Holy Bible), and read therefrom as follows:

"It is reported commonly that there is fornication among you, and such fornication as is not so much as named among the Gentiles, that one should have his father's wife.

"2. And ye are puffed up, and have not rather mourned, that he that hath done this deed might be taken away from among you.

"3. For I verily, as absent in body, but present in spirit, have judged already, as though I were present, concerning him that hath so done this deed,

"4. In the name of our Lord Jesus Christ, when ye are gathered together, and my spirit, with the power of our Lord Jesus Christ.

"5. To deliver such an one unto Satan for the destruction of the flesh, that the spirit may be saved in the day of the Lord Jesus.

"6. Your glorying is not good. Know ye not that a little leaven leaventh the whole lump?

"7. Purge out therefore the old leaven, that ye may be a new lump, as ye are unleavened. For even Christ our passover is sacrificed for us:

"8. Therefore let us keep the feast, not with old leaven, neither with the leaven of malice and wickedness; but with the unleavened bread of sincerity and truth.

"9. I wrote unto you in an epistle not to company with fornicators:

"10. Yet not altogether with the fornicators of this world, or with the covetous, or extortioners, or with idolaters; for then must ye needs go out of the world.

"11. But I have written unto you not to keep company, if any man that is called a brother be a fornicator, or covetous, or an idolater, or a railer, or a drunkard, or an extortioner; with such an one no not to eat.

"12. For what have I to do to judge them also that are without? do not ye judge them that are within?

"13. But them that are without God judgeth. Therefore put away from among yourselves that wicked person."

Plaintiff says that by the reading of this chapter defendant intended to charge her with being guilty of fornication, to her damage $10,000. Defendant pleaded the general issue and the One-Year Statute of Limitations, to which pleas a *similiter* and replication were filed.

At the conclusion of plaintiff's proofs the court, on motion of defendant, instructed a verdict in his favor and plaintiff appeals.

From plaintiff's testimony we gather that she has a fertile imagination which leads her to erroneously construe the language and actions of her pastor and

some of the officers of the church and members of its
congregation. Certainly, after a most careful reading
and weighing of her testimony and her letters pro-
duced on cross-examination, we are unable to conclude
that any serious or slanderous charges were made
against her by defendant, notwithstanding we may be
impressed with the fact that plaintiff herself may hon-
estly, though misguidedly, believe that the conclusions
she has drawn from her pastor's words and actions
are correct. She seems to have been an active church
worker in good standing and repute with her pastor
and fellow-members until the occurrence of the events
which resulted in this action and another which she
has brought against her pastor and one Gus Nelson,
a trustee of the church, for ''conniving'' together, as
she says, to oust her from membership in the church.
At a regular meeting of the church members of either
the 10th or 17th of February, 1912, the exact date be-
ing in some doubt from plaintiff's proof, and at which
meeting she was expelled as a member of the church,
no word was said, as appears from the averments of
the declaration or the testimony of plaintiff, which
constitute actionable slander. Plaintiff on cross-ex-
amination testified that the only reason she had to
think that defendant slandered her was his reading of
the chapter from the ''Corinthians'' set out *in haec
verba* in this opinion. It would seem to us that the
purpose of defendant's reading of this chapter was to
convey to the members present the fact that there was
biblical authority for putting a member out of the
church. The eleventh verse enumerates the offenders
with whom Christians should not associate, and from
which it may naturally be inferred that if any such
there be in the church, they should be put out, not
retained to corrupt by their baneful influence the other
members. These are the words of the eleventh verse:
''But now I have written unto you not to keep com-
pany, if any man that is called a brother be a fornica-

tor, or covetous, or an idolater, or a railer, or a drunkard, or an extortioner; with such an one no not to eat.'' These are the words of St. Paul to the Corinthians— a Saint of great influence in all the Christian churches, regardless of denominational belief, and an unimpeachable authority throughout Christendom. Plaintiff certainly was not justified in concluding that defendant intended, by the reading of chapter 5 of the First Epistle of St. Paul to the Corinthians, or by any word alleged to have been uttered by him on that occasion, to charge her with being a ''fornicator.'' No word alleged to have been spoken by him on that occasion is susceptible of any such interpretation. We judge from plaintiff's testimony and her letters in evidence that if she was guilty of any of the enumerated offenses, it was not the major one of ''fornication,'' but the minor one of being a ''railer;'' but even such a conclusion would not be warranted from the proofs found in the record.

It is contended that the words spoken on the occasion on which they were uttered constituted a privileged communication, and that in order for plaintiff to recover she must prove that express malice incited their utterance. We think that the matters concerning plaintiff were under inquiry at a regular meeting of the congregation, and that the words there spoken by the defendant as the pastor of the church and as presiding officer of the meeting were in the line of his duty and were privileged and not actionable unless the ingredient of express malice entered into them. As to the presence of malice, the record is silent. The occasion will not justify any inference of malice—not even the slight malice argued by counsel for plaintiff as being sufficiently present to impel the learned trial judge to submit the cause to the jury. In the condition of the proofs at the conclusion of plaintiff's case the questions of privileged communication and malice were questions of law for the judgment of the court

and not of fact for the determination of the jury. The action of the learned trial judge in instructing a verdict for defendant was right.

The meeting at which defendant is alleged to have uttered the slanderous words complained about was one of the regular meetings of the church members, and the matters discussed at that meeting related to the government of the church and the discipline of the plaintiff member, at which meeting the defendant, as pastor, was the regular presiding officer, and what he said and did there were within the line of his duties; therefore the words uttered were clearly privileged. The question of the discipline of plaintiff was properly before the meeting, and defendant, as the pastor of the church, had the right to say the things he did about and concerning plaintiff if he believed in their truth and said them from a sense of duty in order to aid the members of the church in determining whether plaintiff should be retained as a member or dismissed. *Everett v. DeLong*, 144 Ill. App. 496.

We think that the text in Newell on Slander, sec. 567 (3rd Ed.) is applicable to the facts in this record, where the author lays down the following rule:

"If, however, the occasion is one of qualified privilege only, the burden is cast upon the plaintiff of proving actual malice on the part of the defendant, and if he gives no such evidence, it is the duty of the court to nonsuit him or to direct a verdict for the defendant." *McDavitt v. Boyer*, 169 Ill. 475.

We think the declaration is obnoxious to a demurrer, for the words spoken and the occasion of their utterance, which fully appear in the declaration, do not constitute actionable slander.

The judgment of the Circuit Court being without error, is affirmed.

*Affirmed.*